IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS T.J. LEAL, SR., | ) | |
| | ) | CASE NO. 3:14-CV-285 |
| Plaintiff, | ) | |
| v. | ) | JUDGE JACK ZOUHARY |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Luis T.J. Leal's ("Plaintiff" or "Leal") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

Leal filed an application for Supplemental Security Income benefits on January 28, 2003. (Tr. 139-40).  Plaintiff alleged he became disabled on October 1, 1999, due to suffering from issues with his back, hip, and leg. (Tr. 84, 184).

Following the filing of the application, the administrative process involved a number of hearings and reviews. (*See* Tr. 444-509, 528-41, 658-70).   The Court will focus on the most recent proceedings that are relevant to Plaintiff's appeal.  On December 30, 2009, Administrative Law Judge ("ALJ") John Markuns issued an unfavorable written decision where he applied the

five-step sequential evaluation to determine that Leal was not disabled.[1] (Tr. 350-58).  After the Appeals Council denied Plaintiff's request for review, Plaintiff sought judicial review of the ALJ's decision in the Northern District of Ohio, and the Court remanded the case. (Tr. 529-35).

On April 25, 2013, ALJ Gabrielle Vitellio conducted another administrative hearing. (Tr. 674-704).  Plaintiff appeared without counsel and testified before the ALJ. (*Id.*).  A vocational expert ("VE"), Suman Srinivasan, also appeared and testified. (*Id.*).  On July 30, 2013, the ALJ issued an unfavorable decision, finding that Leal was not disabled. (Tr. 516-27).  After applying the five-step sequential analysis, the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).  Subsequently, the Appeals Council denied Leal's request for review, making the ALJ's July 30, 2013 determination the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

2

final decision of the Commissioner. (Tr. 510-12).  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II. EVIDENCE

### A. Personal Background Information

Plaintiff was born on October 2, 1953, and was 49-years-old on the date the application was filed and 59-years-old on the date the ALJ rendered his decision. (Tr. 139).  As a result, Plaintiff was defined as a "person of advanced age" for Social Security purposes at the time of the disability determination. 20 C.F.R. § 416.963(e).  Leal completed high school, during which he received mechanic's training, and he claims that he attended three years of college. (Tr. 488-89, 525).  Plaintiff has past relevant work as a cable supervisor. (Tr. 695).

### B. Medical Evidence

On October 10, 2002, Plaintiff presented to Donald Baker, M.D., and complained of back pain. (Tr. 234-35).   Leal informed Dr. Baker that his back pain had been present for the past 32 years, although he had never sought treatment. (Tr. 234).  Upon physical examination, Plaintiff had negative straight leg raises bilaterally. (Tr. 235).  Dr. Baker recommended physical therapy, and provided a prescription for, and samples of, Mobic. (*Id.*).

Dr. Baker saw Plaintiff again in January of 2003 and indicated that he could not diagnose any objective findings to explain Plaintiff's back pain. (Tr. 232).  Leal stated that his financial situation prevented him from attending physical therapy and obtaining medication. (*Id.*).  Dr. Baker prescribed a trial pack of Celebrex, but opined that there were no objective findings to back up Leal's complaint of lumbar pain. (*Id.*).

Leal first presented to orthopedist Frank Jaeblon, D.O., on February 27, 2003. (Tr. 300).  Plaintiff described low back and cervical thoracic pain. (*Id.*).   Dr. Jaeblon diagnosed mild

3

lumbosacaral spondylosis and gave Leal samples of Celebrex. (Tr. 301). The doctor recommended that Plaintiff begin physical therapy and obtain x-rays of his spine. (*Id.*).

On April 14, 2003, Leal underwent x-rays of the cervical spine, which showed some narrowing of the disc space from C4 through T1, which was more pronounced at the C5-6 and C6-7 levels. (Tr. 248, 295). There were also anterior and posterior osteophytes at C5-6 and C6-7. (*Id.*). Some bony encroachment was noted on the right neural foramen at C6-7. (*Id.*). Overall, the x-rays demonstrated moderately severe mid and lower cervical spondylosis, without acute bony abnormality. (*Id.*).

During a follow up visit on April 15, 2003, Dr. Jaeblon noted that x-rays showed moderate vertebral degeneration in the cervical spine at levels C5, C6, and C7, without other significant abnormalities. (Tr. 245-46). The doctor indicated to Leal that there currently was no appropriate surgical intervention. (Tr. 247). Dr. Jaeblon provided samples of Vioxx after Plaintiff complained that Celebrex was not helping. (Tr. 246). The physician also ordered that Leal refrain from working for six weeks. (Tr. 246, 293-94). Thereafter, Plaintiff underwent physical therapy from March to June 2003. (Tr. 258-70, 297-99).

On April 27, 2003, state agency reviewing physician Kamala Saxena, M.D., completed a residual functional capacity ("RFC") assessment evaluating Plaintiff's physical abilities. (Tr. 236-40). She opined that Leal could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 237). Dr. Saxena also opined that Leal could stand, sit, and walk approximately six hours in an eight hour work day. (*Id.*). Based on her review of the record, she concluded that Plaintiff's claims were not credible. (Tr. 240).

In June 2003, Leal returned to Dr. Jaeblon's office and treated with Michael Helvey, D.O. (Tr. 242-444, 290-91). On examination, Leal was able to ambulate well, heel and toe walk,

4

and perform a deep knee bend without difficulty. (Tr. 243).  Plaintiff displayed some limitations in his trunk and neck range of motion. (*Id.*).  Otherwise, Leal had normal strength in his extremities and reflexes. (*Id.*).

Dr. Helvey instructed Leal to continue the exercises he had learned during physical therapy. (Tr. 244, 291).  The doctor acknowledged that Leal expressed concern over what the physician would state in Medicare paper work, which Leal had given him to complete. (*Id.*).  Dr. Helvey felt Leal would be employable at "a type of job where he could have the luxury of standing and sitting and even possibly laying down throughout the day to help control his pain, continue with his Vioxx and exercise." (*Id.*).  In addition, Dr. Helvey remarked that Leal "probably would not be able to do a job where it required a lot of heavy lifting, nor full range of motion of the trunk or neck." (*Id.*).  Dr. Jaebelon signed off on Dr. Helvey's findings and conclusions. (Tr. 291).

In August of 2003, state agency physician E. S. Villanueva, M.D., completed a review of Plaintiff's file to assess his RFC. (Tr. 251-56).  Dr. Villanueva opined that Leal was capable of lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 252).  Dr. Villanueva further found that Leal could sit, stand, or walk roughly six hours in an eight hour work day. (*Id.*).  The doctor commented that Plaintiff's statements regarding his symptoms were not credible, and that Dr. Jaeblon's finding that Plaintiff needed to alternate between sitting, standing, and lying down throughout the day, and could not perform heavy lifting, was not consistent with Plaintiff's mostly normal clinical results.  (Tr. 255).

In September of 2003, Leal presented to Brent Damer, D.O., complaining of pain in his low back, neck, and upper thoracic region. (Tr. 285).  Leal requested that the doctor prescribe a back brace to help support his neck and back while he worked as his job required lifting and

turning. (*Id.*).[2]  Dr. Damer declined to prescribe a brace due to concern that Leal's back would become dependent and the brace would cause muscular weakness. (*Id.*).  Instead, Dr. Damer advised Plaintiff to find a job that did not require "heavy lifting or full body flexion and extension." (Tr. 285-86).  Additionally, Dr. Damer suggested that Leal find work which permitted him to alternate between sitting and standing in order to rest his back.  (Tr. 286).  Dr. Jaeblon co-signed this treatment note. (*Id.*).

When Dr. Jaeblon treated Plaintiff in March of 2004, the doctor performed more x-ray tests. (Tr. 281).  The x-rays showed mild sclerotic changes on Plaintiff's hips. (*Id.*).  Dr. Jaeblon ordered a CT scan of Plaintiff's spine and pelvis for further examination. (Tr. 282).  The physician recommended additional tests, but Leal refused blood work. (*Id.*).  The March 2004 CT scan results were mostly normal. (Tr. 279-80).  Regarding the spine, the doctor commented, "there are some small lumbar osteophytes present at L4 and L2 . . . [but] I do not see evidence of additional finding[s] of significance." (Tr. 279).  Likewise, the doctor's impression of Leal's pelvis stated that "no acute pelvic abnormality is defined." (Tr. 280).

Following the CT scan, Plaintiff presented to Dr. Jaeblon in May and August of 2004. Dr. Jaeblon noted that Leal continued to suffer from degenerative lumbar spine in its early stages. (Tr. 274-75).  During a physical examination, Leal could walk without limitation, reach his toes without much difficulty, and exhibited no limitation in rotation or side bending. (Tr. 275).  Plaintiff expressed subjective pain in the lumbar spine region with palpation. (Tr. 274).  The doctor prescribed physical therapy and pain management. (*Id.*).  In addition, Dr. Jaeblon

---

[2] Treatment notes from St. Vincent Family Care Center indicate that Leal requested the back brace for Social Security purposes in addition to his alleged pain. (Tr. 288).

6

informed Plaintiff that he could recommend no further treatment, as there was nothing that could surgically cure his pain. (*Id.*).

In January 2005, Plaintiff's physical therapist, Ms. Julie Ritter, wrote a letter detailing her care of Plaintiff's back and neck pain, which spanned from October to July of 2004. (Tr. 311). Ms. Ritter noted that physical therapy benefitted Plaintiff, but that he was under a great deal of stress due to financial concerns. (*Id.*). She opined that Plaintiff frequently demonstrated increased pain levels because of his emotional situation. (*Id.*). Ms. Ritter recommended that Leal consult with a psychiatrist to assist with what she perceived to be mental health problems. (*Id.*).

Between March and July of 2006, Leal presented to an array of doctors and physical therapists for pain in his neck, back, and hips. (Tr. 313-34). On August 25, 2006, Plaintiff was seen by John Kamau, M.D. (Tr. 312). Leal complained of bilateral hip pain. (*Id.*). Plaintiff also indicated that he could no longer afford Celebrex, which relieved his pain in the past, but used Aspirin, which provided good relief. (*Id.*). Upon examination, Dr. Kamau noted that Plaintiff's head and neck were normal; his straight leg raise test was normal; and that his abduction, adduction, extension, and flexion were within normal limits. (*Id.*). Dr. Kamau diagnosed Leal with chronic right hip pain extending to the left hip, joint pain in the knee, hip and low back, obesity, and chronic fatigue. (*Id.*). He advised Leal to continue treating his pain with Aspirin, and to return for a follow-up visit only if Aspirin did not relieve the pain. (*Id.*).

Plaintiff continued physical therapy treatment from September through November of 2006. (Tr. 337-45). During this time, he reported that his condition either stayed the same or improved. (*Id.*).

In July 2011, Plaintiff went to the emergency room complaining of pain in the lower lumbar-sacral spine, which radiated over the iliac region into the thigh. (Tr. 650). Leal's lumbar-

sacral spine was tender on palpation, but he had full range of motion in his hips. (*Id.*). An x-ray of the lumbar spine showed narrowing at L5-S1 and some bone-spurring consistent with degenerative changes. (Tr. 651). Plaintiff was discharged in good condition and prescribed ibuprofen, Percocet, and Flexeril. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 28, 2003, the application date.

2. The claimant has the following severe impairments: mild lumbosacral and cervical degenerative disk disease with spondylosis; and osteoarthritis/early degenerative joint disease of the hips and back.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except the claimant: can occasionally engage in postural activities; and can have occasional contact with co-workers and no contact with the general public.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on October 2, 1953, and was 49 years old, which is defined as an individual of advanced age, on the date the application was filed.

7. The claimant has a high school education and is able to communicate in English.

   . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 28, 2003, the date the application was filed.

(Tr. 518-26) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may

9

not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff alleges the ALJ committed a number of errors when reviewing his application for benefits.  Leal's arguments are set out in his brief on the merits (Doc. No. 23), reply brief (Doc. No. 35), and answer to Defendant's surreply. (Doc. No. 37).  Although Plaintiff's answer to the surreply is titled "Motion to Leave to Answer Defendant's Surreply," the motion itself does not seek leave to file an additional brief, but merely states that Plaintiff objects to the surreply. (Doc. No. 37).  Accordingly, the Court will treat the document as Plaintiff voicing his opposition to the surreply.  The undersigned will address each of Leal's allegations of error in turn.

### A.  Vocational Expert Testimony

In his brief on the merits, Leal takes issue with the ALJ's finding at step five. Essentially, Leal maintains that the VE's testimony in this case does not serve as substantial evidence to support the ALJ's decision at the final step of the sequential evaluation.

At the fifth and final step the sequential analysis, the ALJ must determine whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4).  The Commissioner carries the burden to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir.

10

1999).  To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (*quoting Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question if the question accurately portrays the claimant's impairments. *Workman*, 105 F. App'x at 799 (*quoting Varley*, 820 F.2d at 779).

In the present case, the VE accounted for Plaintiff's residual functional capacity ("RFC"). (Tr. 696).  Thereafter, the VE found that Plaintiff would be able to perform the requirements of three occupations, including team assembler, janitor, and stock clerk/linen room attendant. (Tr. 52, 696-97).

Plaintiff argues that the VE's testimony about his ability to perform these jobs is negated by the ALJ's statements during the hearing.  Specifically, Leal points out that ALJ said that "no one can work in a hostile work environment." (Tr. 701).  Leal argues that the jobs identified by the VE involve hostile environments.  Because the ALJ confirmed that individuals cannot work in a hostile work environment, Leal concludes that he cannot perform the jobs identified.

Leal has not pointed to legal authority showing that whether a work environment is "hostile" is relevant to the disability determination, and the Court is unaware of any authority setting forth such a principle.  Despite the ALJ's statement at the hearing regarding an individual's ability to work in an allegedly hostile environment, the ALJ also explained that the concept of a hostile work environment is not a matter of concern when evaluating disability. (Tr. 525, 701).

Furthermore, as the ALJ highlighted in her opinion, the regulations state that a claimant will not be considered disabled as long as his RFC and vocational abilities make it possible for

11

him to preform work which exists in the national economy. 20 C.F.R. § 416.966.  If such is true, the following circumstances will not render a claimant "disabled":  a claimant's inability to obtain work, the hiring practices of employers, a lack of job openings, a claimant not actually being hired to do work he could otherwise do, and a claimant not wishing to do a particular type of work.  *Id.*  Here, Plaintiff's testimony at the hearing seems to indicate that a hostile environment presumably involves actions of individual employers that Plaintiff would find inappropriate. (Tr. 680-81).  Based on the intent of the regulations, a claimant's view of a particular type of work as "hostile" would not undermine VE's testimony.

Moreover, even if the Court were to assume that the hostility of a work environment is relevant to whether a claimant is disabled, which it does not now do, Plaintiff's argument fails. There is no evidence that the jobs identified by the VE involve hostile work environments, however that term may be defined.  Accordingly, it cannot follow that the jobs identified by the VE are unsuitable to support the ALJ's finding at step five.

Leal's related argument—that the record is incomplete and should be supplemented with evidence that would demonstrate a hostile work environment—is also not well-taken.  Leal demands that the government produce Homeland Security records, which he alleges help to identify several aspects of the purported hostile environment that prevents him from working. To the extent that Plaintiff seeks extraneous evidence from Homeland Security that was not before the ALJ, Plaintiff has failed to show how the pursuit of this additional evidence relates to his disability application.  As previously indicated, Leal has not directed the Court to legal authority showing that the allegedly hostile nature of a work environment is relevant to a claim for disability.  Thus, the undersigned concludes that the evidence is not relevant to Plaintiff's application for benefits and need not be made part of the record.

12

Finally, Leal maintains that the ALJ's decision must be in compliance with 42 U.S.C. § 4059, which Leal posits requires a decision to be "based on substantial information." The Court is unable to locate this statute, and it appears that the statute does not exist. Nevertheless, assuming that Leal intends to argue the ALJ's decision must be based on substantial evidence, as explained above, the ALJ's finding at step five is so supported.

**B.  CAT Scan Evidence**

Leal also argues that the ALJ's decision is flawed because "CAT scan evidence" outweighs the evidence that the ALJ relied on in reaching her decision. Attached to Plaintiff's brief on the merits are pages 234, 295, and 297 of the administrative transcript, which he alleges contain this evidence.

Upon review of these attached pages, the Court is unable to find any reference to a CAT scan. As a result, the Court cannot identify what medical evidence Plaintiff is referring to. Page 234 recounts a visit with Dr. Baker from October 10, 2002, for complaints of back pain. Dr. Baker performed a physical examination, which showed no tenderness on palpation to the back, except for around right sacroiliac joint and right gluteal muscles. Leal's straight leg raises were negative bilaterally. Dr. Baker recommended physical therapy and prescribed Mobic. (Tr. 235). Dr. Baker did not discuss or prescribe a CAT scan. (Tr. 234-35). Next, page 295 of the transcript contains the results of an April 2003 cervical spine x-ray. The x-ray showed moderately severe mid and lower cervical spondylosis, with no acute abnormality. Finally, page 297 is a record from a March 2003 initial physical therapy evaluation. Leal complained of pain in the cervical spine and low back. The physical therapist noted that Leal would not permit an examination of his cervical spine. On examination of the lumbar spine, Plaintiff had lumbar flexion at 70

13

degrees and moderate restriction of lumbar extension. The physical therapist characterized Leal's rehabilitation potential as fair. There was no discussion of a CAT scan.

Moreover, this evidence does not undermine the ALJ's RFC determination. The results of Dr. Baker's examination were largely normal. The physician prescribed only conservative treatment and did not impose any physical limitations. While the x-ray of Plaintiff's cervical spine evidenced moderately severe mid and lower cervical spondylosis, the mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). As a result, the x-ray results are not enough to establish that any one or more of Plaintiff's conditions were disabling. Lastly, the physical therapy evaluation sheds little light on the condition of Leal's cervical spine and suggests no notable limitations due to Plaintiff's low back pain.

In her opinion, the ALJ analyzed and discussed various pieces of evidence, which adequately bolster the assigned RFC. For example, the ALJ noted that Plaintiff's treatment for his impairments has been largely routine and conservative. (Tr. 523). The ALJ recounted that Dr. Baker opined surgical intervention was not appropriate for Leal's back problems and that there were not objective findings to support Leal's complaints of lumbar pain. (*Id.*). Additionally, despite Leal's inability to afford medications, the ALJ highlighted that Leal stated over-the-counter Aspirin provided good pain relief. (*Id.*). Accordingly, Plaintiff's argument is not well-taken.

### C. Hallex I-2-6-58

Plaintiff asserts that the Hearings, Appeals, and Litigation Law ("Hallex") manual rules offered the ALJ an alternative in reaching the disability decision, though Plaintiff does not specify what this alternative route might have been. Leal also claims that his case is "different

14

and warrants special consideration," on the basis of these rules, but he provides no further insight into this allegation.  Leal cites to Hallex I-2-6-58, and the Court will assume that this is the Hallex section he wishes to use in support of alleging that the ALJ erred.

Hallex I-2-6-58 discusses the ALJ's ability to admit evidence into the administrative record.  HALLEX I-2-6-58 (S.S.A.), 1993 WL 643036 (June 9, 2014).  It explains: "The administrative law judge (ALJ) will admit into the record any evidence he or she determines is material to the issues in the case.  Evidence is material if it is relevant, i.e., involves or is directly related to issues being adjudicated." *Id.*  The ALJ may admit evidence, even though it would otherwise be inadmissible under the rules of evidence. *Id.*  The rule focuses on how the ALJ may make evidence part of the record prior to the administrative hearing. *Id.*  It briefly discusses how the ALJ may accept additional evidence within five days of the administrative hearing, after the hearing but before a decision has been issued, and after a hearing decision has been issued. *Id.*  If the claimant submits evidence following the hearing decision, the ALJ will forward the information to the Appeals Council if the claimant submits a request for review of the ALJ's decision. *Id.*

Here, Plaintiff asserts that the ALJ ought to have ordered the government to produce evidence from Homeland Security and make such evidence part of the record.  However, Hallex I-2-6-58 provides that the ALJ can admit evidence, but only if it is *material*—that is, the evidence must involve or be directly related to issues being adjudicated.  As noted earlier in this opinion, Leal has not shown that evidence from Homeland Security is relevant to his disability claim.  Accordingly, the Court does not find error on the basis of Hallex I-2-6-58.

### D. Age

Plaintiff also contends that his age qualifies him for benefits.  He notes that he is 61-years-old and cites to 20 C.F.R. § 416.963-416.986d(1)-(3) in support of this conclusion.

A claimant's age is assessed under the four-tiered structure set out in 20 C.F.R. § 416.963.  Individuals under age 50 are considered "younger persons" and age plays little role in determining disability. 20 C.F.R. § 416.963(c).  Claimants between the ages of 50 and 54 are considered "closely approaching advanced age," and age must be considered in determining the disability determination. 20 C.F.R. § 416.963(d).  Claimants who are age 55 or older are deemed "persons of advanced age," and individuals who have reached age 60 are "closely approaching retirement age." 20 C.F.R. § 416.963(e).  Special rules apply to the disability evaluation when individuals reach age 55. *Id.*  In relevant part, these rules indicate that an individual of advanced age, who is limited to sedentary or light work, will be found unable to adjust to other work unless he has skills that can transfer to other skilled or semiskilled work that can be performed, despite any impairments. 20 C.F.R. § 416.968(d)(4); *see Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1111 (6th Cir. 1994) ("People of advanced age (55 and over) are considered at an age which significantly affects their ability to do substantial gainful activity; if they are severely impaired and cannot do medium work, they must have skills that can be transferred to less demanding jobs which exist in significant numbers in the national economy.").

"[T]he claimant's age as of the time of the decision governs in applying the regulations." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  Here, at the time of the hearing and the ALJ's disability determination, Leal was 59-years-old, which places him in the "advanced age" category.

16

The ALJ observed that Leal was 49 on the date the application was filed, making him a "person of advanced age." (Tr. 525).  The ALJ's statement regarding Leal's age is partially flawed.  It is accurate that Leal was 49 on the date the application was filed.  However, at this age, Leal would have been considered a younger individual.  At the time of the disability determination, Leal had turned 59, and as such, he was a person of advanced age.

Despite this ambiguity in the ALJ's written decision, the administrative hearing transcript provides clarity and demonstrates that the ALJ used Plaintiff's correct age and age category when making the disability determining.  The hearing transcript reflects that the ALJ instructed the VE that Plaintiff was in the advanced age group. (Tr. 696-97).  Accounting for Leal's age, education, work experience, and residual functional capacity, the vocational expert testified that Leal would be able to perform the requirements of occupations that exist in significant numbers in the national economy. (*Id.*).  Accordingly, the ALJ appropriately accounted for Leal's age.

Nor is the Court aware of any other error that may relate Leal's age.  The special considerations of transferability of skills set out in 20 C.F.R. § 416.968(d)(4) do not apply here, because the ALJ found that Leal was capable of work at the medium exertional level, with the limitation of occasional engagement in postural activities.  Additionally, given Plaintiff's age, the Medical Vocation Guidelines ("the Grid") would not have resulted in a finding of disability.  When an ALJ finds a claimant has both exertional and nonexertional impairments, as in Leal's case, the Grid rules do not directly apply, unless a rule directs that the claimant is disabled based on his exertional limitations. 20 C.F.R. § 416.969a(d).  If a rule does not lead to a finding that an individual is disabled based upon strength, the Grids provide only a framework to guide the decision. *Id.*

17

Here, the applicable set of Grid rules are set out in Table 3, which applies to workers limited to medium work as a result of severe medically determinable impairments. 20 C.F.R. Part 404, Subpart P, App. 2.  For claimants of advanced age, the table directs a finding of disability only if the claimant has less than a high school education and has no prior work experience. 20 C.F.R. Part 404, Subpart P, App. 2 §§ 203.10 to 203.17.  Plaintiff's age, coupled with his education and prior work experience, would not render him disabled under the Grid.

### E.  Internal Revenue Records

Plaintiff previously filed a "Motion to Com[p]ly with Court Order/File Surreply" in which he indicated his desire to obtain Internal Revenue Service ("IRS") records that would show he earned $25,000 per year in the nineteen-nineties. (Doc. No. 32).  Leal set forth no substantive argument illustrating how the records relate to his disability application. (*Id.*).  The Court permitted Plaintiff to explain in his reply brief why the evidence he seeks from the IRS is relevant to the appeal of the ALJ's decision. (Doc. No. 34).  Leal does not make clear in his reply, or elsewhere, how these documents are relevant.  Accordingly, the Court rejects Plaintiff's request for this information.

Giving Plaintiff the benefit of the doubt, the Court will address a way in which these records might relate to Plaintiff's appeal.  In her opinion, the ALJ observed that Plaintiff worked only sporadically prior to the alleged disability onset date of October 1, 1999. (Tr. 524).  The ALJ felt that this sporadic work history raised a question as to whether Plaintiff's continuing unemployment was due to his physical impairments. (*Id.*).  The record supports the ALJ's observation that Plaintiff's work during this period was intermittent. (Tr. 181).

Again, Leal does not assert that he wishes to get records from the IRS in an effort to show that he worked and earned income steadily during this period prior to his application.

18

Nevertheless, assuming that this was Leal's intent, evidence that he earned $25,000 per year during this time would not undermine the ALJ's decision.  Even if this observation by the ALJ regarding the import of Plaintiff's work history was disregarded, substantial evidence remains to support that Leal was not disabled. Where remand would be an "idle and useless formality," courts are not required to demand further review of agency action. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (*citing NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)).  Here, the ALJ based the disability determination on various factors beyond Plaintiff's prior work history.   These included Plaintiff's record of conservative treatment, the results of physical examinations, observations from physicians, and Plaintiff's ability to engage in various daily activities, among which were providing extensive care for his uncle.  Thus, even if IRS records were to show that Leal worked more than sporadically during this time period, remand would not be necessary as substantial evidence remains in support of the ALJ's disability determination.

### F.  Other Arguments

Leal poses two additional allegations of errors in his brief on the merits and reply brief. To begin, Leal argues that the regulations and rules that govern social security disability do not mandate that he undergo a consultative mental health examination, which the ALJ suggested during the administrative hearing. (Tr. 524, 692-94).  During the hearing, Leal refused to attend a consultative mental health examination, even though the ALJ indicated that evidence from such an examination had the potential to further his application for benefits. (*Id.*).

The social security regulations give the Commissioner the discretion to ask that a claimant attend a consultative examination at the administration's expense, if information required to make a disability determination cannot be obtained from a claimant's medical

19

sources. *See* 20 C.F.R. §§ 416.912, 416.919a.  Thus, it is true that the ALJ was not required to order a mental health consultative examination for Leal in order to determine whether or not Leal was disabled.  Nevertheless, because the ALJ had the discretion to request such an examination, proposing such an approach was not in error.  Even though the ALJ explained that the information could be helpful to Leal in obtaining benefits, Leal refused the examination.  Accordingly, the undersigned cannot conclude that the ALJ erred by recommending a consultative examination.

In addition, Leal argues that evidence, which is attached to his reply brief, demonstrates that the Defendant committed record tampering and slander.  Without some further explanation showing how Defendant has tampered with evidence, the Court cannot address this allegation.  As to slander, such a claim is not properly asserted as part of a social security appeal.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: December 23, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).